## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

KEARA McGRAW,                                      CASE NO. 8:17-cv-1215-T-17TGW

      Plaintiff,

v.

EMERGENCY RECOVERY, INC.,
a Florida Corporation,

      Defendant.

_____/

## JOINT MOTION AND MEMORANDUM OF LAW REQUESTING APPROVAL OF SETTLEMENT AND ENTRY OF AN ORDER OF DISMISSAL

Plaintiff, Keara McGraw ("Plaintiff"), and Defendant, Emergency Recovery, Inc. ("Defendant") (collectively, the "Parties"), hereby move this Court to approve the Parties' settlement agreement as it relates to Plaintiff's claims for unpaid wages under the Fair Labor Standards Act ("FLSA"), and all claims asserted or that could have been asserted in the action. The Parties agree that the terms of the settlement are mutually satisfactory and reasonable. This Court's approval of the settlement agreement and entry of an Order dismissing the case, with prejudice, will consummate the Agreement between the Parties.

### PROCEDURAL AND FACTUAL BACKGROUND

Defendant is a Florida corporation that provides specialized services and solutions to hospitals and physicians in the area of third-party liability. Complaint (Dkt. No. 2; Compl.) ¶ 6. Defendant identifies viable claims, expedites payment recovery, and tracks and reports progress and performance. Id. Plaintiff was employed by Defendant as a bookkeeper beginning in February 2017. Id. ¶ 7. Plaintiff was paid $16.50 per hour and was classified as a non-exempt employee. Id.

On May 23, 2017, Plaintiff filed a complaint against Defendant alleging that she was not paid for certain weeks. Id. ¶¶ 8, 9. Plaintiff sought compensation for these unpaid hours. Id. Defendant denied Plaintiff's allegations.

Counsel for the Parties engaged in a voluntary settlement conference during which, Defendant denied the contentions in Plaintiff's complaint and informally alleged certain counterclaims. Specifically, Defendant believed that Plaintiff should not have been paid because she had allegedly assisted another employee in the writing of unauthorized checks, an allegation in which Plaintiff vehemently denies.

The Parties had a bona fide dispute over Plaintiff's FLSA claims. Plaintiff continues to assert that Defendant owes her monies under the FLSA. Defendant continues to assert that it does not owe Plaintiff any monies under the FLSA and that it fully paid Plaintiff at all times. However, in an effort to avoid the time, cost, and risk associated with protracted litigation, Defendant participated in discussions with Plaintiff regarding potential early resolution of the case.

The Parties exchanged information in an effort to resolve Plaintiff's claims and entered into settlement negotiations, as set forth above. A settlement was reached on or about June 14, 2017, after a few rounds of negotiations where Plaintiff instructed her counsel to accept the settlement offer presented here. Pursuant to the Settlement Agreement attached hereto as **Exhibit A** and signed by the Parties, Plaintiff will receive Two Hundred and Fourteen Dollars and Fifty Cents ($214.50), minus legal deductions, representing unpaid wages owed under the FLSA, and Two Hundred and Fourteen Dollars and Fifty Cents ($214.50), representing payment for liquidated damages under the FLSA. Plaintiff's counsel's law firm of Savage Villoch Law, PLLC, will receive Two Thousand Five Hundred Dollars and Zero Cents ($2,500.00), representing attorney's fees and costs that Plaintiff has

incurred in relation to bringing this action. The attorney's fees were agreed to separately and without regard to the amount paid to settle Plaintiff's FLSA claims. See Bonetti v. Embarq Mgmt. Co., 2009 WL 2371407 (M.D. Fla. Aug. 4, 2009). Thus, the amount to be paid by Defendant for Plaintiff's attorney's fees did not adversely affect the amounts paid by Defendant to Plaintiff. The Parties are not disputing the reasonableness of the settlement or the reasonableness of the attorney's fees and costs.

Consequently, the settlement represents a reasonable compromise of Plaintiff's claims, so the Parties move this Court to approve the settlement of the FLSA claims and to dismiss the above referenced action with prejudice.

## MEMORANDUM OF LAW

The Court is required to approve a private settlement of unpaid wages arising under the FLSA. The Eleventh Circuit has held that:

> There are only two ways in which back wage claims arising under the FLSA can be settled or compromised by employees. First, under section 216(c), the Secretary of Labor is authorized to supervise payment to employees of unpaid wages owed to them. . . . The only other route for compromise of FLSA claims is provided in the context of suits brought directly by employees against their employer under section 216(b) to recover back wages for FLSA violations. When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness.

Lynn's Food Stores, Inc. v. United States Dep't of Labor, 679 F.2d 1350, 1352-53 (11th Cir. 1982). The court further held that, "[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as . . . computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." Id. at 1354.

In this case, the Parties were represented by competent counsel and the settlement amount and agreement was the subject of arms-length and adversarial negotiations. The

Parties agree that the settlement reached between them represents a "fair and reasonable" resolution to Plaintiff's FLSA claims, including disputed FLSA back pay liability for unpaid compensation, liquidated damages, and attorney's fees and costs. The Parties also agree that the settlement reached advances judicial economy and should be approved by this Court. Settling the case at this juncture satisfies Plaintiff's desire to avoid the risk and time associated with protracted litigation and reduces the chance that any judgment eventually obtained in beyond Defendant's ability to pay.

## CONCLUSION

Based on the foregoing, the Parties jointly and respectfully request that this Court approve the Parties' settlement agreement as it relates to Plaintiff's FLSA claims and dismiss the instant action with prejudice.

 /s/ Alfred Villoch, III
Alfred Villoch, III
Florida Bar No. 631434
**Savage Villoch Law, PLLC**
412 E. Madison Street, Suite 1120
Tampa, Florida 33602
Tel: (813) 251-4890
Fax: (813) 354-4561
E-Mail: alfred@savagelaw.us
Attorneys for Plaintiff

/s/ Nicole Wall
Nicole Wall
Florida Bar No. 017430
**Cole, Scott & Kissane, P.A.**
Esperante Building
222 Lakeview Avenue, Suite 120
West Palm Beach, FL 33401
Tel: (561) 383-9200
Fax: (561) 683-8977
E-Mail: Nicole.Wall@csklegal.com
Attorneys for Defendant

# Exhibit A

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO. 8:17-cv-1215-T-17TGW

KEARA McGRAW,

      Plaintiff,

vs.

EMERGENCY RECOVERY, INC.,
a Florida corporation,

      Defendants.

_____/

## CONFIDENTIAL SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Confidential Settlement Agreement and Mutual Release (hereinafter "Settlement Agreement" or "General Release") is made and entered into this 30 day of June, 2017 by and between KEARA McGRAW (hereinafter "First Party") and EMERGENCY RECOVERY, INC. (hereinafter "Second Party") (all parties jointly referred to from time to time as the "Parties").

### RECITALS

1.     The Parties desire to enter into this Settlement Agreement in order to resolve all claims between KEARA McGRAW and EMERGENCY RECOVERY, INC., upon the terms and conditions set forth below.

2.     As part of the consideration of this Agreement, First Party affirms that she received fair and substantial consideration in settlement of her claims against Second Party

3.     The Parties agree that, unless otherwise specified herein, when the Settlement Agreement refers to KEARA McGRAW and EMERGENCY RECOVERY, INC., such reference shall be all encompassing and include, but not be limited to, any and all agents, representatives, corporations, subsidiaries, associated or affiliated companies, past, present, or future relatives,

Case No. 8:17-cv-1215-T-17TGW

directors, officers, managers, shareholders, employees, agents, representatives, assigns, and successors.

## AGREEMENT

NOW, THEREFORE, for and in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties hereto agree as follows:

1.      Recitals. The foregoing recitals are true and correct and incorporated by reference into this Settlement Agreement.

2.      Agreement Not to be Deemed an Admission of Liability.  First Party understands and agrees that the payment of the aforedescribed consideration is not to be construed as an admission of liability on the part of any and all parties and entities hereby released, all of whom expressly deny same.

3.      Consideration. In consideration of the mutual covenants and releases contained in this Settlement Agreement, as well as the agreements and actions described below required by the Parties, the Parties agree that Second Party will pay First Party the sum of TWO THOUSAND NINE HUNDRED TWENTY-NINE AND 00/100 DOLLARS ($2,929.00), in lawful money of the United States of America.  The settlement payment shall be made in three separate checks as follows:

A.      Check # 1 to KEARA McGRAW in the amount of $214.50 (for wages minus relevant applicable withholdings and deductions);

B.      Check # 2 to KEARA McGRAW in the amount of $214.50 (for liquidated damages);

Case No. 8:17-cv-1215-T-17TGW

C.     Check # 3 to SAVAGE VILLOCH LAW, PLLC in the amount of $2,500.00 for attorney's fees and litigation costs;

The settlement proceeds paid to First Party, as reflected above, shall be fully paid in two separate checks (one check for wages and another check for liquidated damages). The portion attributable to wages will be subject to applicable withholding at the usual and customary rate. The portion attributable to liquidated damages will be without withholding, but reported on a Form 1099. The payment to First Party's counsel is in lieu of and for statutory attorneys' fees and costs under the FLSA. First Party understands and agrees that such payment to her attorneys is in full and final satisfaction of any claim for attorneys' fees arising out of this action. The Settlement Payments shall be sent to First Party's counsel within ten (10) business days of the date that the Court approves this Agreement. No other consideration shall be paid by Second Parties to First Party in connection with this Settlement Agreement.

4.     Prohibition Against Assignment: First Party agrees that she will not assign, transfer, or sell any legal right, contractual right, claim or cause of action of any kind which she now has or may hereinafter acquire against Second Party, whether pursuant to common law or statute, to any third person, party or entity.

**GENERAL RELEASE AND HOLD HARMLESS AGREEMENT**

1.     General Release by KEARA McGRAW to EMERGENCY RECOVERY, INC.

KEARA McGRAW (hereinafter referred to as "First Party") for and in consideration of the sum of TWO THOUSAND NINE HUNDRED TWENTY-NINE AND 00/100 DOLLARS ($2,929.00), in lawful money of the United States of America, received from EMERGENCY RECOVERY, INC. ("hereinafter referred to as "Second Party"), receipt whereof is hereby acknowledged, does hereby remise, release, acquit and forever discharge the Second Party, all

- 3 -

Case No. 8:17-cv-1215-T-17TGW

related entities, affiliates, subsidiaries, (including Celler Law and/or any other companies or entities owned in whole or in part by Bobbie Celler), their current and former incorporators, owners, shareholders, officers, directors, administrators, employees, former employees, counsel, insurers, counsel for insurers, claims handlers, successors, and consultants (hereinafter collectively referred to as "Second Parties"), from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action of whatever kind and character, in law or in equity, in contract or tort or public policy, both known and unknown, suspected or unsuspected, disclosed and undisclosed, actual and consequential, specific and general, however denominated, which First Party ever had, now has, or which any personal representative, successor, family member, heir or assign of said First Party now has ~~or may hereinafter acquire~~ against said Second Parties, including but not limited to those arising out of or in any way connected with the employment of First Party with Second Party in any position at any time, and including but not limited to all claims raised in the claim alleged against EMERGENCY RECOVERY, INC., presently pending in the United States District Court, Middle District of Florida, Case No. 8:17-cv-1215-T-17TGW (the "Lawsuit"), for wages, overtime pay, front or back pay, income from any source, declaratory or injunctive relief, lost benefits, commission, liquidated damages, compensatory or punitive damages, money, remuneration, attorneys' fees, costs, expert's fees and costs, expenses, or thing of value whatsoever, by First Party against Second Parties, as well as claims arising under or relating to:

a.    The Fair Labor Standards Act, 29 U.S.C. §§ 201, 206 and 207, *et seq.*;

b.    Article X § 24, Florida Constitution, Florida Minimum Wage Amendment;

c.    The Florida Human Rights Act and the Florida Civil Rights Act of 1992 codified in Chapter 760 of the Florida Statutes;

d.    The Labor Management Relations Act of 1947;

- 4 -

Case No. 8:17-cv-1215-T-17TGW

  *e.*  The Equal Pay Act of 1963;

  *f.*  The Occupational Safety and Health Act of 1970;

  *g.*  The Rehabilitation Act of 1973;

  *h.*  The Health Maintenance Organization Act of 1973;

  *i.*  The Immigration Reform and Control Act of 1986;

  *j.*  The Family and Medical Leave Act of 1993 ("FMLA");

  *k.*  Executive Orders 11141, 11246, and 11375;

  *l.*  42 U.S.C. § 1981, § 1982, § 1983, § 1985, or § 2000;

  *m.*  The Americans with Disabilities Act ("ADA");

  *n.*  The Consolidated Omnibus Reconciliation Act ("COBRA");

  *o.*  The Employee Retirement Income Security Act of 1974 ("ERISA");

  *p.*  The Civil Rights Acts of 1866, 1871, 1964 (including Title VII of that Act), or 1991;

  *q.*  The Internal Revenue Service Code;

  *r.*  Chapter 448, Florida Statutes;

  *s.*  Chapter 440, Florida Statutes;

  *t.*  Chapter 112, Florida Statutes;

  *u.*  The Age Discrimination in Employment Act ("ADEA");

  *v.*  Any claim for defamation, libel, or slander;

  *w.*  Any federal, state or local laws prohibiting employment discrimination;

  *x.*  The employment, terms of employment, conditions of employment and separation from employment of First Party by Second Parties;

  *y.*  Any claims arising from alleged harassment, negligence or intentionally tortious conduct by Second Parties occurring before, during or after the employment of First Party by Second Parties through the day of this release;

Case No. 8:17-cv-1215-T-17TGW

      z.      Any claims for intentional infliction of emotional distress, negligent infliction of emotional distress, fraud, breach of contract, any pain and suffering whatsoever, occurring before, during or after the employment of First Party by Second Parties through the day of this release;

      aa.    Any claims for damages, injuries, illnesses, workers compensation, or complications now known or that may later be discovered, including all effects and consequences thereof;

The listing of specific types of claims as set forth above is not intended to limit in any way the general and comprehensive scope of this Release from First Party to Second Parties. First Party further agrees that it is her express intent to enter into this full and final settlement and compromise of any and all claims against Second Parties whatsoever, including but not limited to those arising out of or in any way connected with the employment or engagement of First Party, at any time, from the beginning of the world to the date of execution by First Party of this Agreement. First Party further agrees that she will not file any claim or join in any claim as an individual or as a member of a class in any federal, state or local court or agency in regard to Second Parties, but nothing herein shall be construed as any form of a bribe or other hindrance to give truthful testimony pursuant to a subpoena, lawful discovery request, or court order. First Party recognizes that no lawsuit can be filed against Second Parties for any claim released as part of this Agreement. Except for enforcement of this Agreement, if First Party should later initiate or participate in any legal action or proceeding against Second Parties, for any claim arising or accruing before and through the effective date of this agreement, which she should not, this Agreement will be conclusive evidence that any such claims have been released.

      This General Release is also to apply to any and all claims for costs and attorneys' fees arising out of the lawsuit which is the subject of this General Release, as well as causes of action arising out of the aforementioned lawsuit.

- 6 -

Case No. 8:17-cv-1215-T-17TGW

2.    The Second Parties for and in consideration of the First Party's dismissal of the Lawsuit with prejudice, do hereby remise, release, acquit and forever discharge the First Party, any personal representative, successor, family member, heir or assign, from any and all rights, obligations, liens, claims, damages, demands, relief, liabilities, equities, actions and causes of action of whatever kind and character, in law or in equity, in contract or tort or public policy, both known and unknown, suspected or unsuspected, disclosed and undisclosed, actual and consequential, specific and general, however denominated, which the Second Parties ever had, now has, or which of said Second Parties now have against said the First Party, including but not limited to those arising out of or in any way connected with the employment of First Party with Second Parties in any position at any time.

3.    Resignation and Waiver of Reinstatement/Re-Employment:  First Party agrees and recognizes that her relationship and employment with Second Party has been permanently and irrevocably dissolved.  First Party expressly waives reinstatement, re-employment and/or claim of right to employment, independent contractor, or subcontractor status with Second Party, whatsoever, and agrees that she will not now and will not in the future seek re-employment, independent contractor, or subcontractor status with Second Party.  If, however, First Party should, through inadvertence, mistake, or otherwise, re-apply for employment with Second Party, First Party understands and agrees that she will not be extended an offer of employment and that no claims or potential claims may arise from the denial of employment.  Further, in the event that First Party should become employed by Second Party, First Party understands and agrees her employment will be immediately terminated consistent with this provision.  Accordingly, First Party acknowledges and agrees that she is waiving any and all rights, and

- 7 -

Case No. 8:17-cv-1215-T-17TGW

releases any and all claims she may have to challenge any such action as constituting unlawful retaliation or other violation of law.

      4.     <u>Release Inclusions and Unforeseen Injuries</u>: First Party fully understands and agrees that this Release includes but is not limited to any and all claims, damages, including compensatory and punitive damages, attorneys' fees, sanctions, penalties, costs, and causes of actions alleged or which could have been alleged or brought under the laws, codes and statutes of any and all state, federal, foreign, local or territorial jurisdictions. Further, this Release extends and applies to and also covers and includes, all unknown, unforeseen, unanticipated and unsuspected injuries, damages, including compensatory and punitive damages, losses and liabilities and the consequences thereof, arising out of the aforementioned lawsuit. First Party fully understands and agrees that this Release includes, but is not limited to, a resolution of all claims and potential claims for attorneys' fees and costs. First Party agrees not to file an appeal in connection with the subject case that is the subject of this General Release.

      5.     <u>Confidentiality</u>: First Party hereby agrees to keep strictly confidential the existence of the Settlement Agreement resolving this matter, and all matters described in the Settlement Agreement, including payment amounts. Neither First Party, nor her representatives, agents, or attorneys, will give any notice, or make any publication or announcement to any third party with regard to the resolution of this dispute, settlement of this lawsuit, execution of this Settlement Agreement, or the consummation of the transactions contemplated by the Settlement Agreement, without the prior written consent of the other party. First Party, on behalf of herself, her attorneys and all others, further acknowledges and agrees that the terms, conditions, and parties of and to this settlement, including any payments made hereunder, shall remain strictly confidential and shall not be disclosed or made known to any third person or party unless such

- 8 -

Case No. 8:17-cv-1215-T-17TGW

disclosure is required by law. If First Party is asked about the matter, she shall respond only that it was "amicably resolved." First Party agrees not to disclose the existence of this agreement, the contents of this agreement or subject matter to any person other than her attorney, accountant, or income tax preparer, except pursuant to written authorization by the other party or as compelled by law or Court order. A breach of the confidentiality provision of this General Release and Hold Harmless Agreement by First Party will result in disgorgement of the Plaintiff's portion of the Settlement Payments. In any action to enforce this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs.

6.    Non-Disparagement: First Party acknowledges and agrees that she will not make any disparaging, defamatory, or derogatory remarks about Second Party, its owners, officers, managers, employees, products, services, or business practices. First Party agrees to refer any potential employers seeking job references to EMERGENCY RECOVERY, INC.'S Human Resources Department. The Parties agree that EMERGENCY RECOVERY, INC.'S Human Resources Department will provide employers seeking job references with only a written "neutral" reference verifying First Party's employment with Second Party and the dates and position(s) in which she was employed by Second Party. A breach of the non-disparagement provision of this General Release and Hold Harmless Agreement by First Party will result in disgorgement of the Plaintiff's portion of the Settlement Payments. To the extent that First Party breaches the non-disparagement provision of this General Release and Hold Harmless Agreement, Second Party shall also be entitled to any and all damages as a result of said breach. In any action to enforce this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs.

Case No. 8:17-cv-1215-T-17TGW

      7.    <u>Taxes</u>: First Party agrees to indemnify and hold harmless Second Party for any and all taxes associated with the above-referenced $2,929.00 payment, as well as any other taxes associated with compensation that KEARA McGRAW received from EMERGENCY RECOVERY, INC., up until the date of this agreement. This indemnification and hold harmless includes the costs of reasonable attorney fees incurred in the defense of any such claim for taxes.

      8.    <u>Opportunity to Review</u>: First Party acknowledges that she has had a full opportunity to read the contents of this Release and has had the benefit of counsel in reviewing said Release.

      9.    <u>Complete Agreement</u>: First Party further acknowledges and agrees that (1) no promise or agreement not expressed herein has been made to her, (2) this General Release constitutes the entire agreement between the Parties hereto, (3) the terms of this General Release are contractual and not a mere recital, and (4) there is no agreement or compromise on the part of the Second Party to do any act or thing not mentioned herein. Should either Party be required to enforce the terms of this agreement for breach of same, upon a proven breach, the prevailing party shall be entitled to its reasonable attorneys' fees and costs.

      10.    <u>Capacity</u>: First Party declares, covenants, and warrant that the she is over the age of eighteen (18) years, and that she is not suffering from any legal, mental, or physical disabilities which would impair or disable her from executing this General Release and that there have been no representations and/or statements made by the Second Party hereto or its agents, insurers, employees, or representatives to influence the First Party in making or executing this General Release.

Case No. 8:17-cv-1215-T-17TGW

11.    <u>Severability</u>: If any section or part of this General Release is held to be invalid by a court of law, the remaining portions of the General Release shall continue to be in full force and effect.

12.    <u>Declaration</u>: First Party hereby declares that the terms of this settlement agreement have been completely read and are fully understood and voluntarily accepted for the purposes of making a full and final compromise, adjustment and settlement of any and all claims, disputes or otherwise, on account of the injuries or damages, costs and/or attorney's fees suffered by the First Party and for the express purpose of precluding forever any further or additional claims alleged against Second Party arising out of the matter styled KEARA McGRAW versus EMERGENCY RECOVERY, INC., presently pending in the United States District Court, Middle District of Florida, Case No. 8:17-cv-1215-T-17TGW, as well as any other claims or causes of action arising out of the subject matter.

13.    <u>Acknowledgment</u>: First Party hereby acknowledges that prior to executing this Agreement, she consulted with her attorney. First Party also acknowledges that she was given twenty-one (21) days to consider the Agreement, and was informed that she could revoke the Agreement within seven (7) days after signing it and that it did not become effective until the time to revoke the Agreement had ended. The Settlement Payment will be delivered to First Party's attorney no earlier than following the seven (7) day revocation period (however, Second Parties are not required to make such payment prior to the date as indicated in Paragraph 3 of the Agreement above).

Case No. 8:17-cv-1215-T-17TGW

14.    In any action to enforce this Agreement, the prevailing party shall be entitled to recover attorneys' fees and costs.

**IN WITNESS WHEREOF,** we have hereunto set our hands and seals this 26ᵗʰ day of June, 2017.

IN THE PRESENCE OF:

_____
WITNESS

_____
WITNESS

_____
KEARA McGRAW

STATE OF FLORIDA              )
                              ) SS:
COUNTY OF Pinellas            )

Sworn to and subscribed before me this 26 day of June, 2017, by KEARA McGRAW, who is personally known to me or who has produced Florida Drivers License as identification.

_____
NOTARY PUBLIC
TYPED NAME: Kristen Sam
COMMISSION EXPIRES: Dec 20, 2020
COMMISSION NO.: n/a



KRISTEN SAM
MY COMMISSION # GG 052852
EXPIRES: December 6, 2020
Bonded Thru Notary Public Underwriters

Case 8:17-cv-01215-E_K-TGW   Document 8   Filed 07/10/17   Page 17 of 18 PageID 51

Case No. 8:17-cv-1215-T-17TGW

**IN WITNESS WHEREOF,** we have hereunto set our hands and seals this ___|0___ day

of June, 2017.

IN THE PRESENCE OF:                     EMERGENCY RECOVERY, INC.

By: _____
WITNESS                                  Its _____C-E-O-_____

_____

WITNESS

STATE OF FLORIDA            )
                            )   SS:
COUNTY OF Broward           )

Sworn to and subscribed before me this _10__ day of June, 2017, by
Bobbie Celler _____ as _____ of
EMERGENCY RECOVERY, INC., who is personally known to me or who has produced
Fl Driver License ____ as identification.
C460.060.78.137.0

_____

NOTARY PUBLIC

OLEIDA FELIZ
Notary Public - State of Florida
Commission # GG 029192
My Comm. Expires Sep 18, 2020

TYPED NAME: Oleida Feliz
COMMISSION EXPIRES: 9 18 17
COMMISSION NO.: GG 029192

- 13 -

OLEIDA FELIZ
Notary Public - State of Florida
Commission # GG 029192
My Comm. Expires Sep 18, 2020